**Robert K. Meyer, OSB No. 086470**
  Email:  robert@oregonworkplacelaw.com
**Michael Owens, OSB No. 104720**
  Email:  mike@oregonworkplacelaw.com
MEYER STEPHENSON
1 SW Columbia St Ste 1850
Portland, OR 97204
Voice: (503) 459-4010
Fax: (503) 512-5022
        *Of Attorneys for Plaintiff*

Haley Morrison, OSB No. 154972
  Email:  haley.morrison@tonkon.com
Megan R. Reuther, OSB No. 153919
  Email:  megan.reuther@tonkon.com
Carlie Bacon, OSB No. 172949
  Email:  carlie.bacon@tonkon.com
Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR  97204
Telephone:  503.221.1449
Facsimile:  503.274.8779
        *Of Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **ASHLEY DELANY**, | Case No. 3:20-cv-02188-MO |
| Plaintiff, | |
| v. | **PROPOSED PRE-TRIAL ORDER** |
| **PROBUILD COMPANY LLC dba BUILDERS FIRSTSOURCE**, a Delaware limited liability company, **LORA BALLOU**, and **TIMOTHY KIRKPATRICK**, | |
| Defendants. | |

# I. NATURE OF THE ACTION

This is an employment dispute brought by Plaintiff Ashley Delany ("Plaintiff" or "Delany") against Defendant ProBuild Company, LLC, dba Builders FirstSource ("BFS"), Defendant Timothy "TJ" Kirkpatrick ("Kirkpatrick"), and Defendant Lora Ballou ("Ballou") (collectively, "Defendants"). In this suit, Plaintiff alleges violations of various federal and state employment laws and seeks monetary and injunctive relief, damages, costs, punitive damages, and attorney's fees.[1] Defendants deny any wrongdoing whatsoever and assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory, nonretaliatory reasons.

This case will be tried to a jury, except for the following claims, which are not eligible for jury determination and thus will be tried to the Court: Plaintiff's claims under the Oregon Family Leave Act ("OFLA") (Claims Seven and Eight), Oregon Sick Leave Act ("OSLA") (Claims Nine and Ten), and discrimination and retaliation for pregnancy-related conditions or accommodations (Claim Six).[2] *Schultz v. NW Permanente P.C.*, No. 3:20-CV-00626-IM, 2022 WL 2072602, at \*1 (D. Or. June 9, 2022); ORS 659A.147.

# II. BASIS FOR FEDERAL JURISDICTION

Plaintiff brings several claims under federal statutes, specifically Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

---

[1] Not all of Plaintiff's claims allow for all of the types of relief sought. For example, compensatory and punitive damages are not available for Plaintiff's claims for interference with, retaliation for, and/or denial of medical leave rights or sick leave rights (Claims Two, Seven, Eight, Nine, and Ten) and discrimination and retaliation for pregnancy-related conditions or accommodations (Claim Six).

[2] The Court will decide the question of equitable damages, if necessary, for some of the claims tried to the jury.

12112, 12203. Those claims are subject to the Court's federal question jurisdiction under 28 U.S.C.

§ 1331. All of Plaintiff's other claims, which arise under the laws of the State of Oregon, form part

of the same case or controversy, and are therefore subject to the Court's supplemental jurisdiction

pursuant to 28 U.S.C. § 1367.

### III. AGREED UPON FACTS

1.      BFS is a supplier of building materials, manufactured components, and

construction services with locations throughout the United States.

2.      Plaintiff is a female who resides in Oregon.

3.      In or around January 2018, BFS hired Plaintiff to work as an Office Administrator

at its Clackamas, Oregon location.

4.      Plaintiff was supervised by the Office Manager, Ballou, who, in turn, was

supervised by the store's General Manager, Kirkpatrick.

5.      Upon hire, Plaintiff received a copy of BFS's attendance policy.

6.      In or around July 2019, Plaintiff underwent surgery. Plaintiff followed BFS's

process and applied through BFS's third-party leave administrator for approximately two weeks

of medical leave under FMLA and OFLA, which BFS approved.  Following her leave, in or around

late July 2019, Plaintiff returned to work, without medical restrictions and without requests for

accommodations.

7.      In or around August 2019, Plaintiff shared with Ballou that she was going to pursue

becoming a paid surrogate*[3].

---

[3] Plaintiff disputes the relevance of Plaintiff having been paid any amount related to the surrogacy arrangement, believing that the fact is legally immaterial to Plaintiff's employment rights.  Defendants disagree.

8.     Plaintiff also informed Ballou that she might miss work sporadically for tests and treatments. Ballou asked Plaintiff to provide as much notice as possible for these absences.

9.     In or around November 2019, Plaintiff executed a contract to provide surrogacy services in exchange for compensation (the "Contract")*[4].

10.     Starting in fall 2019, Plaintiff attended several appointments necessary to pursue becoming pregnant under the Contract.  These appointments often required time off from work.

11.     In or around December 2019, Plaintiff missed approximately two weeks of work. She informed Ballou that she missed work because she and her son were sick.

12.     In January 2020, Plaintiff continued to attend appointments necessary to pursue becoming pregnant under the Contract, causing her to miss work with BFS.

13.     On or around January 29, 2020, Ballou coached Plaintiff about her recent absences. Ballou prepared a written memorandum summarizing the discussion. Ballou and Plaintiff both signed the memorandum.

14.     On or around February 17, 2020, Kirkpatrick and Ballou met with Plaintiff to counsel her on attendance. Ballou took notes during the meeting.

15.     On or around March 2, 2020, and as follow up to the February 17 meeting, Plaintiff received an email from Ballou with a form resignation letter*[5]. Plaintiff did not reply to this email.

---

[4] Plaintiff disputes the relevance of Plaintiff having been paid any amount related to the surrogacy arrangement, believing that the fact is legally immaterial to Plaintiff's employment rights.  Again, Defendants disagree.

[5] The Parties dispute the motivation of this email.  Defendants assert that, following the February 17 meeting, both Kirkpatrick and Ballou believed that Plaintiff intended to resign her job at BFS. Plaintiff denies this.

16.     On or around March 13, 2020, Plaintiff informed BFS that her son and her partner's son's schools and daycares were closed due to the COVID-19 pandemic, and that she would have to stay home from work to care for them. Plaintiff's partner's son lived with them half of the time and with his mother for the other half.

17.     Plaintiff did not ever return to work after March 13, 2020.

18.     On or around March 19, 2020, Plaintiff emailed Dana Jasmer ("Jasmer"), a former Human Resources Manager for BFS, asking about pay and time off while she was home with her son and her partner's son. Jasmer responded by explaining that BFS was approving short-term absences for child care due to the COVID-19 pandemic, but employees were required to follow BFS's daily call-in policy.  Plaintiff and Jasmer had additional communication about her childcare needs.

19.     On March 19, 2020, Plaintiff flew with her son to Georgia, where Plaintiff's mother lives, leaving her son in her mother's care.  Plaintiff returned home to Oregon alone on March 22, 2020.

20.     Plaintiff did not inform BFS that her son was staying with his grandmother in Georgia.

21.     Between March 19, 2020, and April 10, 2020, Plaintiff did not report for work at BFS.  She did not offer to work part-time.

22.     In or around the week of March 23, 2020, Plaintiff applied for unemployment.

23.     After receiving notice of Plaintiff's application for unemployment benefits, on or around April 8, 2020, Kirkpatrick emailed Jasmer asking to "move forward with Plaintiff's termination."  Jasmer agreed.

24.     On or around April 10, 2020, BFS sent Plaintiff a letter formalizing her separation. As a result, Plaintiff's employment with BFS ended on April 10, 2020.

25.     Plaintiff did not get pregnant during her employment with BFS, pursuant to the Contract or otherwise.

26.     Plaintiff filed a complaint of unlawful employment practices against Defendants with the Equal Employment Opportunities Commission ("EEOC") and the Oregon Bureau of Labor and Industries ("BOLI") on or around July 9, 2020. BOLI issued Plaintiff a Notice of Right to File a Civil Suit on or around October 9, 2020, and then Plaintiff filed this action.

## IV. CLAIMS AND DEFENSES

**A.     Plaintiff's Claims.**

1.     <u>Sex and Pregnancy Discrimination, 42 U.S.C. § 2000e-2(a) and ORS 659A.030(1)(a)-(b) (Counts 1 and 5).</u>

Plaintiff alleges that BFS violated these statutes by subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of sex, pregnancy, or medical conditions and occurrences related to pregnancy or childbirth.

To the extent these claims are based on pregnancy, childbirth, or related medical conditions, Defendants deny Plaintiff is a member of a protected class. Defendants also allege that Plaintiff was not performing her job satisfactorily or that other similarly situated employees were not treated more favorably. In any event, Defendants assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory reasons, including her alleged failure to comply with BFS's attendance and call-in procedure.

2.      Interference with, Retaliation for, and/or Denial of Medical Leave Rights, 29 U.S.C. § 2615(a) and ORS 659A.183(1)-(2) (Counts 2, 7, and 8).

Plaintiff alleges that BFS violated these statutes by denying Plaintiff leave and/or subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of her use of or attempted use of protected medical leave under the statutes, including for: (1) sex, pregnancy, or medical conditions and occurrences related to pregnancy or childbirth; (2) illness and/or serious health conditions of herself and/or her covered family member; or (3) the need to provide childcare as a result of COVID-19 and related school or childcare closures and government emergency orders.

To the extent that Plaintiff bases these claims on her use of protected leave in July 2019, Plaintiff cannot demonstrate a connection between her leave and eventual termination. Further, according to Defendants, Plaintiff knew how to, but did not, apply or otherwise request protected leave after July 2019.   Defendants believe Plaintiff will also be unable to demonstrate an entitlement to protected leave under OFLA or FMLA in March 2020. Defendants likewise assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory, nonretaliatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

3.      Discrimination and Retaliation for Pregnancy-Related Conditions or Accommodations, ORS 659A.147 (Count 6).

Plaintiff alleges that BFS violated this statute by failing to make reasonable accommodations to Plaintiff's known limitations related to pregnancy, childbirth, or a related medical condition, and by taking adverse action against Plaintiff, including discipline and termination, in response to Plaintiff's requests for and attempt to use such accommodations.

Defendants contend that Plaintiff cannot demonstrate that she suffered any limitations related to pregnancy, childbirth, or a related medical condition during her employment at BFS. Defendants also content that she likewise cannot show a specific, reasonable accommodation that BFS failed to provide, or that she was performing her job satisfactorily. Defendants argue that Plaintiff likewise failed to put Defendants on notice as to the need for any such accommodations. Defendants further assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory, nonretaliatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

4.      <u>Interference with, Retaliation for, or Denial of Sick Leave Rights, ORS 653.641(1)-(2) (Counts 9 and 10).</u>

Plaintiff alleges that BFS violated this statute by denying Plaintiff OSLA leave and/or subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of her use or attempted use of protected sick leave under the statutes, including for: (1) sex, pregnancy, or medical conditions and occurrences related to pregnancy or childbirth; (2) illness and/or injury of herself and her covered family member; or (3) the need to provide childcare as a result of COVID-19 and related school or childcare closures and government emergency orders.

Defendants contend that they provided Plaintiff with all of the protected sick leave that she requested and to which she was entitled. Defendants further assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory, nonretaliatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

5.      <u>Disability Discrimination and Failure to Accommodate a Disability, 42 U.S.C. § 12112, ORS 659A.112 (Counts 14 and 16).</u>

Plaintiff alleges that one or more of her medical conditions constituted a disability under state and federal law, that she was a qualified individual with or without reasonable

accommodation, and the BFS violated these statutes by denying Plaintiff reasonable accommodations and/or subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of her disability or need for accommodation.

Defendants contend that Plaintiff cannot demonstrate that she had a qualifying disability under federal or state law during her employment at BFS. Defendants argue that she likewise cannot show a specific, reasonable accommodation that BFS failed to provide, or that she was performing her job satisfactorily. Defendants further argue that Plaintiff likewise failed to put Defendants on notice as to the need for any such accommodation or the existence of any such disability. Defendants assert that all employment decisions related to Plaintiff were based on legitimate, nondiscriminatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

6. <u>Disability-Related Retaliation, 42 U.S.C. § 12203, ORS 659A.109 (Counts 15 and 17).</u>

Plaintiff alleges that BFS violated these statutes by subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of Plaintiff's invocation of disability-related rights, including requesting accommodation(s).

Defendants contend that Plaintiff cannot demonstrate that she invoked disability-related rights: she was not a qualified individual with a disability, and she never requested a reasonable accommodation. Defendants further assert that all employment decisions related to Plaintiff were based on legitimate, nonretaliatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

7. <u>Retaliation for Opposing an Unlawful Employment Practice, ORS 659A.030(1)(f) (Count 11).</u>

Plaintiff alleges that Defendants violated this statute by subjecting Plaintiff to adverse employment action, including discipline and termination, on the basis of Plaintiff's opposition to her unlawful treatment, including her request not to lose her job after receiving retaliatory discipline.

Defendants contend that Plaintiff cannot demonstrate that she engaged in protected activity. Defendants further assert that all employment decisions related to Plaintiff were based on legitimate, nonretaliatory reasons, including her failure to comply with BFS's attendance and call-in procedure.

8. <u>Aiding and Abetting an Unlawful Employment Practice, ORS 659A.030(1)(g) (Count 12).</u>

Plaintiff alleges that all Defendants violated this statute by aiding, abetting, inciting, compelling, or coercing one another in the violations of ORS Chapter 659A noted above, including under FMLA, OFLA, OSLA, and the Oregon ADA.

Defendants contend that, because they argue Plaintiff cannot establish any of the underlying claims, Plaintiff also cannot demonstrate that all Defendants aided and abetted in those alleged violations.

9. <u>Wrongful Discharge in Violation of Public Policy (Count 13).</u>

Plaintiff alleges that Defendants discharged her in violation of the public policy of the United States and the State of Oregon, including as expressed through FMLA, OFLA and OSLA. The "statutory remedies under FMLA and OFLA do not preempt a wrongful-discharge claim under Oregon law because they do not authorize an award of general or non-economic damages for emotional distress[.]" *Pacosa v. Kaiser Found, Health Plan of the NW*, No. 09-cv-1137-BR, 2011

WL 208205 *14 (D. Or. 2011) (internal quotation marks omitted). Like OFLA, OSLA also does not authorize general or non-economic damages. *See* ORS 659A.885(3). Thus, Plaintiff alleges a wrongful discharge claim resting on the same facts and legal principles as her claims under FMLA, OFLA, and OSLA.

Defendants contend that, because Plaintiff cannot establish any of the underlying FMLA, OFLA, and OSLA claims, Plaintiff's wrongful discharge claim cannot stand. Further, to the extent this claim is based on other claims, such as Plaintiff's discrimination or retaliation claims, Defendants argue that the statutory framework underlying those claims already provide a full remedy. *Shaw v. R.U. One Corp.*, 822 F. Supp. 2d 1094, 1099 (D. Or. 2011) (plaintiff had an adequate remedy under ORS 659A.030 and a wrongful discharge claim was not available for the same conduct). As such, Defendant argue that a claim of wrongful discharge is unavailable.

**B.      Defendants' Affirmative Defenses.**

1.      <u>First Affirmative Defense – Failure to State a Claim</u>

Defendants contend that, for the reasons laid out in detail above, Plaintiff cannot establish a *prima facie* case for her claims.

Plaintiff believe she will be able to demonstrate a *prima facie* case on each claim.

2.      <u>Third Affirmative Defense – Title VII, Limitations</u>

Defendants contend that Plaintiff's sex and pregnancy discrimination claims (Claims 1 and 5) and disability discrimination and failure to accommodate a disability claims (Claims 14 and 16) are subject to the compensatory and punitive damages caps laid out in 42 USC 1981a(b)(3).

Plaintiff agrees that some of her federal claims will be subject to certain damages caps.

3.    <u>Fourth Affirmative Defense – Failure to Mitigate Damages</u>

Defendants contend that Plaintiff has done nothing to satisfy her affirmative duty to mitigate her alleged compensatory damages since her separation from employment with BFS in April 2020.  As such, she is not eligible for compensatory damages.  *Ballinger v. Klamath Pacific Corp.*, 135 Or. App. 438, 474 (1995) (no damages when plaintiff failed to seek other employment opportunities after constructive discharge).

Plaintiff contends that she adequately met any reasonable duty to mitigate damages, or that any failure to mitigate damages was for excusable reasons under the law.

4.    <u>Fifth Affirmative Defense – Legitimate, Non-Discriminatory, Non-Retaliatory Reasons</u>

Defendants contend that all employment actions with respect to Plaintiff were taken in good faith and were based on legitimate, nondiscriminatory, and nonretaliatory reasons.

Plaintiff denies this.

5.    <u>Seventh Affirmative Defense – No Punitive Damages</u>

Defendants contend that, of the few claims that allow for punitive damages, Plaintiff cannot demonstrate the facts sufficient for such an award.  As such, any question of punitive damages should not be given to the jury.

Plaintiff argues that she will be able to demonstrate that Defendants' conduct met the threshold for punitive damages.

6.    <u>Ninth Affirmative Defense – Failure to Follow Usual and Customary Notification Rules</u>

Defendants contend that Plaintiff's second, third, fourth, seventh, eighth, twelfth, and thirteenth claims for relief are barred because she did not follow BFS's usual and customary

notification or procedural requirements related to requests for leave or requests for accommodations. As such, she failed to put BFS on notice of any such need.

Plaintiff argues that she followed all necessary notification requirements both as required by law and as communicated to her by Defendants.

7.  <u>Eleventh Affirmative Defense- Adequate Statutory Remedy</u>

Defendants contend that an adequate statutory remedy exists for Plaintiff's claims for pregnancy, disability, or sex discrimination or retaliation; failure to accommodate; and/or retaliation for opposing an unlawful employment practice. To the extent that any of the aforementioned claims are the basis of Plaintiff's wrongful discharge claim, as mentioned above, such a claim is unavailable given the available statutory remedy.

Plaintiff argues that the statutes underlying many of her claims do not contain remedies for noneconomic or punitive damages, and therefore that statutory remedies are not available on those claims.

8.  <u>Twelfth Affirmative Defense – After-Acquired Evidence</u>

Defendants contend that, in June 2020, they discovered that Plaintiff sent her son to stay with Plaintiff's mother in Georgia in March 2020, during the same period that Plaintiff had asserted she needed to stay home to care for him given the COVID-19-related school closures. As such, Plaintiff's absences were not covered by any legal protection. What is more, she could have, at least, worked part time during this period. Had Defendants known that Plaintiff had misled BFS about her need to stay home full time, it would have terminated her employment for dishonesty. This defense precludes Plaintiff from seeking reinstatement or front pay on both her state and federal claims.

Plaintiff contends that she did not mislead Defendants at any time. Plaintiff asserts that made the last-minute decision to take her child to stay with a relative during a global pandemic. Plaintiff further asserts that, at this time, Defendants had largely stopped communicating with Plaintiff about any notice requirements and had suggested her job was already being taken from her. Finally, Plaintiff alleges that her childcare responsibilities did not end when she brought her son to stay with her mother.

## V. PROPOSED AMENDMENTS TO THE PLEADINGS

Plaintiff intends to file a second amended complaint omitting her current Counts 3 and 4, which assert claims under the Families First Coronavirus Relief Act, which do not apply in this case. Defendants intend to file a response to Plaintiff's second amended complaint and omit Affirmative Defenses Two, Six, Eight, Ten, Thirteen, and Fourteen.

**Respectfully Submitted this 17th day of July, 2022:**

MEYER STEPHENSON

*s/ Michael Owens*
Robert K. Meyer, OSB No. 086470
  robert@oregonworkplacelaw.com
Michael Owens, OSB No. 104720
  mike@oregonworkplacelaw.com
1 SW Columbia St., Ste. 1850
Portland, OR 97204
Voice: (503) 459-4010
Fax: (503) 512-5022

*Attorneys for Plaintiff*

TONKON TORP LLP

*s/ Megan R. Reuther*
Haley M. Morrison, OSB No. 154972
  haley.morrison@tonkon.com
Megan R. Reuther, OSB No. 153919
  megan.reuther@tonkon.com
Carlie E. Bacon, OSB No. 172949
  carlie.bacon@tonkon.com
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
Voice: (503) 221-1440
Fax: (503) 274-8779

*Attorneys for Defendants*

The foregoing Pretrial Order is:

_____ Approved as filed.

_____ Approved as amended: _____.

   SO ORDERED THIS _____ DAY OF _____, 2022.


_____
HONORABLE MICHAEL W. MOSMAN
United States District Court Judge

042493\00002\13801745v1
042493\00002\13814324v1